# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

BENNIE THOMAS,

        Plaintiff,

vs.                                                CASE NO: 2:04-cv-368-FtM-29SPC

JO ANN BARNHART,
Commissioner of Social Security,

        Defendant.

_____

## REPORT AND RECOMMENDATION[1]

_____This matter comes before the Court on the Plaintiff Bennie Thomas' Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on July 6, 2004.   The Plaintiff filed his Memorandum of Law in Support of the Complaint (Doc. #11) on April 4, 2005.   The Commissioner filed her Memorandum of Law in Support of the Commissioner's Decision (Doc. #15) on April 28, 2005.   Thus, the Motion is now ripe for review.

_____The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1]This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

## FACTS

### *Procedural History*

The Plaintiff protectively filed an application for Supplemental Security Insurance Benefits (SSI) on November 24, 1999.  (Tr. 45-57).  This application was denied initially and upon reconsideration.  (Tr. 25-29).   The Plaintiff requested an administrative hearing and on January 8, 2002, a hearing was held before Administrative Law Judge (ALJ) Ruben Rivera.  (Tr. 9; 335-353).  On February 19, 2002, the ALJ issued a decision denying the Plaintiff's application for benefits.  (Tr. 9-20).  A timely request for review was filed with the Appeals Council.  On April 30, 2004, the Appeals Council issued a decision denying the request for review.  (Tr. 5-7).  As a result, the ALJ's decision became the final decision of the Commissioner.  Pursuant to 42 U.S.C. § 405(g),  the Plaintiff now seeks judicial review of the Commissioner's final decision.

### *Plaintiff's History*

At the time of the hearing, the Plaintiff was forty-two (42) years old.  (Tr. 13).  He had a tenth (10th) grade education.  (Tr. 13; 340).  He has a past work history as a sod layer and lawn maintenance laborer.  (Tr. 13).

### *Medical History*

At the time of his administrative hearing,  Mr. Thomas was 42 years old and had finished the tenth grade.  Although Mr. Thomas was living with a friend at the time of his hearing, the record reveals that he spent a significant amount of time "on the streets" or homeless. (Tr. 250-252).  Mr. Thomas testified that he was in "special ed" beginning in the third grade until he stopped going to school in the eleventh grade. (Tr. 340-341).   Mr. Thomas applied for SSI benefits during a ten-day stay at Lee Memorial Hospital commencing on November 23, 1999,

2

due to complications from HIV/AIDS.   Mr. Thomas was initially diagnosed as HIV positive in 1993, and began treatment with Dr. Robert Schwartz.   In August of 1995, Mr. Thomas complained that he had difficulty sleeping, experienced night sweats and was congested. At this time, his absolute CD-4 count was 630 and he was diagnosed with bronchitis and Hepatitis B. (Tr. 91-93).   In August 1999,  Mr. Thomas was treated and released by the Lee Memorial Hospital Emergency Room due to a scalp laceration and contusion to the head sustained during an altercation with another individual. A CT scan, at that time, revealed atrophy of the brain, preliminarily attributed to Mr. Thomas's chronic alcohol abuse. (Tr. 136).

On November 21, 1999, Mr. Thomas presented twice at the Lee Memorial Hospital Emergency Room complaining of abdominal pain and uncontrollable vomiting. (Tr. 156-164). Mr. Thomas was placed on a saline drip and given 10 milligrams Reglan intravenously. After the second discharge from the E.R.,  Mr. Thomas was given a prescription for Prilosec and Ativan. (Tr. 151).  Two days later, on November 23, 1999, Mr. Thomas was admitted to Lee Memorial Hospital and stayed for ten days for HIV/AIDS, fever, sepsis, and AIDS related wasting. (Tr. 165; 187).  He was also diagnosed with Hepatitis B and C and a contusion to the right mandible. (Tr. 165). Dr. Schwartz, in his treatment notes during the hospitalization, described Mr. Thomas as a "thin frail male looking older than his stated age... will be worked up for severe wasting and HIV-AIDS will be re-staged." (Tr. 187-188).

At the time of his November 1999 hospitalization, Mr. Thomas's absolute CD-4 count was 319. (Tr. 248).   During 2000, Mr. Thomas's absolute CD-4 count ranged from a low of 47 in April 2004 to a high of 457 in June of 2000. (Tr. 110-113).  On June 19, 2000, Dr. Schwartz issued a letter in which he opined that Mr. Thomas was disabled due to AIDS, cytomegalovirus,

3

pancreatitis, severe wasting, Hepatitis B and C, pneumonitis, pneumonia and endocarditis. (Tr. 109). Dr. Schwartz also noted that Mr. Thomas was coping with substance abuse and mental confusion. (Tr. 109). Dr. Schwartz specifically pointed out that illiteracy and mental confusion prevented Mr. Thomas from being able to complete the forms required for pursuing his claim for SSI benefits. (Tr. 109).

On December 26, 1999 and May 21, 2001, Mr. Thomas presented to the emergency room at Lee County Memorial Hospital and was treated for abdominal pain. (Tr. 15). The record also reveals that Mr. Thomas was followed by the AIDS Resource Council of Southwest Florida from November 23, 1999, through June 7, 2000. This agency provided case management services to Mr. Thomas as a person living with HIV/AIDS. The records from the Council reveals that Mr. Thomas complained of blurred vision, nausea and vomiting, headaches, night sweats and pain. (Tr. 249-254).

Mr. Thomas testified at his hearing that he frequently experienced pain, upon exertion, dizziness, problems with concentration, difficulties sleeping, nausea, thrush, rashes, numbness and tingling, and headaches. He testified that his usual weight was 150 pounds. Mr. Thomas also testified that he cannot read very well and if he receives anything in the mail, he had to have somebody else read it to him. (Tr. 337-352). In addition to the record before the ALJ at the time of the administrative hearing, Mr. Thomas also submitted new evidence to the Appeals Council together with an argument as to why review was warranted. This new evidence included a medical report, dated December 3, 2003, from Dr. Schwartz, Mr. Thomas' treating physician

since 1993, indicating that the Plaintiff suffered from HIV/AIDS with cytomegalovirus[2], Hepatitis C, Granulocytopenia[3], HIV Wasting Syndrome, sepsis and endocarditis[4].  (Tr. 322).  Dr. Schwartz also indicated that Mr. Thomas suffered from pancreatitis, chronic obstructive pulmonary disorder (COPD) and experienced persistent night sweats and fevers.  (Tr. 323).  The additional medical evidence included updated treatment notes from the AIDS Resource Council of Southwest Florida from July 2003 through December 2003.  These notes reveal that in February 2003, the Plaintiff's absolute CD-4 count was 120, in July 2003, the absolute number was reduced to 27 and in December 2003, laboratory resulted showed an absolute CD-4 count of 11.  (Tr. 327-330).  In addition, by August 2003, the Plaintiff's weight was 136 pounds which represented an almost 10% reduction in his usual stated weight of 150 pounds.  (Tr. 327).

<u>*Administrative Law Judge's Decision*</u>

Upon consideration of the record, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability.  (Tr. 19).  The ALJ determined that the Plaintiff has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(b).  (Tr. 19).  However, the ALJ found that the medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (Tr. 19).  The ALJ found that the

---

[2]Cytomegalovirus is defined as a widely distributed species-specific herpesvirus; in humans, it inhabits in many different tissues and cuases cytomegalic inclusion disease. *Taber's Cyclopedic Medical Dictionary*, 507 (Donald Menes, M.D. ed., 19th ed. F.A. Davis 1997)(hereinafter *Taber's*)

[3]Granulocytopenia is defined as an abnormal reduction of granulocytes (a granular leukocyte) in the blood. *Taber's* at 865.

[4]Endocarditis is defined as infection or inflammation of the heart valves or of the lining of the heart. *Taber's* at 671.

Plaintiff's allegations regarding his limitations were not totally credible. (Tr. 19). Having carefully considered all of the medical opinions in the record regarding the severity of the Plaintiff's impairments, the ALJ concluded that the Plaintiff retains the residual functional capacity to: lift and/or carry ten (10) pounds frequently, and twenty (20) pounds occasionally in an 8-hour workday (with normal breaks); stand and/or walk for a total of about six (6) hours; sit for a total of about six (6) hours; and has an ability to push and/or pull consistent with his ability to lift and carry. (Tr. 19-20). The ALJ further concluded that the Plaintiff was not capable of performing any of his past relevant work. (Tr. 20). Under 20 CFR § 416.965, the ALJ considered the Plaintiff to be a "younger individual between the ages of 18 and 44" and to have a "limited education". (Tr. 20). 20 C.F.R. § 416.964. The ALJ found the Plaintiff to possess no transferrable skills from any past relevant work. 20 C.F.R. § 416.968. Regarding the Plaintiff's residual functional capacity (RFC), the Plaintiff was found to be capable of a full range of light work. (Tr. 20). Based upon the exertional capacity of light work and the Plaintiff's age, education and work experience, the Plaintiff was found to be "not disabled" as directed by Medical-Vocational Rule 202.17. Thus, the Plaintiff was found to be not disabled under the Social Security Act.

## THE STANDARD OF REVIEW

### A. Affirmance

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed 2d 842 (1971). In evaluating whether a claimant is disabled, the

ALJ must follow the sequential inquiry described in the regulations[5].  See 20 C.F.R. §§

404.1520(a), 404.920(a).  The Commissioner's findings of fact are conclusive if supported by

substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla-*i.e.*, the

evidence must do more than merely create a suspicion of the existence of a fact, and must include

such relevant evidence as a reasonable person would accept as adequate to support the

conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker,

672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District

Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

even if the reviewer finds that the evidence preponderates against the Commissioner's decision.

Edwards v. Sullivan, 937 F.2d 580, 585 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.3d 1356,

1458 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account

evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; Lowery v.

_____

[5]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:

*Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.

*Step 2.*  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.

*Step 3.*  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.

*Step 4.*  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.

*Step 5.*  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

Sullivan, 979 F.2d 835, 837 (11th Cir 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court  "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]."Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

### B.  Reversal and Remand

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  The district court may also remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).

To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim. <u>Jackson</u>, 99 F.3d at 1090 - 91 (remand appropriate where ALJ

failed to develop a full and fair record of claimant's residual functional capacity); <u>Davis</u>, 985 F.2d

at 534 (remand to the Secretary is warranted where the ALJ has failed to apply the correct legal

standards).  Where the district court cannot discern the basis for the Commissioner's decision, a

sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his

decision. <u>Falcon v. Heckler</u>, 732 F.2d 827, 830 (11th Cir. 1984). (remand was appropriate to

allow ALJ to explain the his basis of his decision).

On remand under sentence four, the ALJ should review the case on a complete record,

including any new material evidence upon a showing that there is new evidence which is material

and that there was good cause for the failure to incorporate such evidence into the record during a

prior proceeding. <u>Diorio v. Heckler</u>, 721 F.2d 726, 729 (11th Cir. 1983)(finding ALJ error and

remanding to consider psychiatric evaluation); <u>Reeves v. Heckler</u>, 734 F.2d 519, 522 n.1 (11th

Cir. 1984) (remanding on the grounds that it is reversible error for the ALJ not to order a

consultative examination when warranted). After a sentence-four remand, the district court enters

a final and appealable judgment immediately, and then loses jurisdiction. <u>Jackson</u>, 99 F.3d at1095.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the

Commissioner if new, material evidence becomes available to the claimant. <u>Jackson</u>, 99 F.3d at

1095. Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to  be taken
> before the Commissioner of Social Security, but only upon a showing that
> there is new evidence which is material and that there is good cause for the
> failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). To remand under sentence six, the claimant must establish: 1.)

that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and

probative so that there is a reasonable possibility that it would change the administrative result;

and 3.) there is good cause for failure to submit the evidence at the administrative level.  Jackson,

99 F.3d at 1090 - 92; Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir.

1994).  With a sentence-six remand, the parties must return to the district court after remand to

file modified findings of fact. Jackson, 99 F.3d at 1095. The district court retains jurisdiction

pending remand, and does not enter a final judgment until after the completion of remand

proceedings.⁶ Id.

### C.   Standard of Review for Evidence Evaluated by the Appeals Council

Congress left the term "final decision" undefined in 42 U.S.C. § 405 (g). Where a

claimant exhausts his administrative remedies by requesting review by the Appeals Council and

the Appeals Council then denies review, the Appeals Council's order denying review is a "final

decision" of the Commissioner under § 405 (g). Sims v. Apfel, 530 U.S. 103, 106-107, 120 S.Ct.

2080, 147 L. Ed. 2d 80 (2000); Bloodsworth, 703 F.2d at 1239.  The Appeals Council "will"

review a case if there appears to be an abuse of discretion by the ALJ, if there is an error of law,

or if the ALJ's action, findings, or conclusions are not supported by substantial evidence. 20

C.F.R. § 416.1470; Sims, 530 U.S. at 111; Parker v. Bowen, 788 F.2d 1512, 1518 (11th Cir.

1986) (en banc). The Appeals Council's denial of review is subject to judicial review to determine

---

⁶The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. Jackson, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. **Id.** In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. Id.

if it is supported by substantial evidence. Sims, 530 U.S. at 111.

Just as the ALJ has a duty to investigate the facts and to develop the arguments both for and against the granting of benefits, the Appeals Council's review is similarly broad. Id. at 111-112.  When the Appeals Council refuses to consider new evidence submitted to it and denies review, the Appeals Council's decision denying review is subject to judicial review. 20 C.F.R. § § 404.970 (b); 416.1470 (b); Keeton, 21 F.3d at 1066.  Furthermore, the Appeals Council commits reversible error when it refuses to consider new evidence if that evidence was available at the time of or prior to the ALJ's hearing and then denies review. Id. at 1066.  Similarly, it is reversible error for a district court to consider only the evidence presented to the ALJ — and to ignore the new evidence presented to the Appeals Council — in reviewing a decision of the Appeals Council. Id.  The Appeals Council must consider and evaluate new evidence to determine whether there is a basis for changing the ALJ's decision. Falge v. Apfel, 150 F.3d 1320, 1322 n. 4 (11th Cir. 1998). When the Appeals Council has denied review, the district court looks only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence. Id. at 1323; Eads v. Secretary of Health and Human Services, 983 F.2d 815, 817 (7th Cir. 1993) (ALJ cannot be faulted for failure to weigh evidence never presented to him). The Eleventh Circuit directs the district courts to consider evidence submitted to the Appeals Council in reviewing the Appeals Council's denial of review. Falge, 150 F.3d at 1324; Keeton, 21 F.3d at 1066.  Indeed, it makes sense that Congress has provided for judicial review of the Commissioner's final decision — the last step of review necessary to exhaust administrative remedies. When the Appeals Council refuses to consider new evidence submitted to it, the Appeals Council's decision denying review is subject to judicial review for error. Id.   Similarly,

11

when the Appeals Council denies review of an ALJ's decision after receiving, considering, and evaluating new and material evidence that clearly and thoroughly undermines the ALJ's findings of fact and conclusions of law, the Appeals Council's decision denying review also must be subject to judicial review for error. 20 C.F.R. § 404.970 (b) (Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the relevant period, and it will then review the case if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record); Falge,150 F.3d at 1324; Keeton, 21 F.3d at 1066, 1068.  The Commissioner cannot avoid judicial review of the Appeals Council's decision to deny review by considering but not acting on new evidence that is highly probative of disability, or by considering but not acting on evidence that shows in retrospect that an ALJ's action, findings, or conclusion are contrary to the weight of the evidence currently of record.

## ANALYSIS

The Plaintiff asserts that the ALJ erred in the denial of his claims.  As grounds, the Plaintiff states that: (1) the ALJ failed at Step 5 by utilizing the Medical-Vocational Grids (the Grids);  (2) the ALJ failed to fully and fairly develop the record by not obtaining a psychological or psychiatric examination; and (3) the case should be remanded to consider "new" evidence under Sentence Six.  The Defendant responds that the ALJ's decision was supported by substantial evidence and decided by the proper legal standards and should therefore be affirmed.

### (1)Whether the ALJ Erred at Step Five by Relying Upon the Medical-Vocational Grids

The Plaintiff argues that the ALJ erred at Step Five of the sequential evaluation process by relying upon the Grids to determine other work that the Plaintiff can perform as opposed to utilizing a vocational expert.  In response, the Defendant contends that the ALJ appropriately

considered the Plaintiff's exertional and non-exertional impairments finding that the Plaintiff could not return to his past relevant work.  Thus, the ALJ's use of the Grids to determine the existence of jobs in the national economy was appropriate.

Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Id. at 1558; Allen v.Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. Foote, 67 F.3d at 1558.

Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P,Appendix 2, § 200.00 (e); Foote, 67 F.3d at 1559 (citing Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L. Ed. 2d 66 (1983) (holding that exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." Walker v. Bowen, 826 F.2d 996, 1002-03 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Foote, 67 F.3d at 1559; MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) (when non-exertional limitations are alleged, the preferred method of demonstrating that the claimant can perform

specific work is through the testimony of a vocational expert). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Foote, 67 F.3d at 1559.

The Medical-Vocational Grids may be used to direct an unfavorable decision only if the Plaintiff has the exertional RFC to perform substantially all of the seven primary strength demands required by work at the given level of exertion and there are no non-exertional limitations. The existence of occupations in the national economy are met by administrative notice when the criteria of the Grids is met. The ALJ considered the Plaintiff's medical evidence and the Plaintiff's subjective symptoms. As he outlined in his decision, all seven factors were considered during his evaluation. (Tr. 16).

At this point, the ALJ had to make a determination as to whether the Plaintiff retains the residual functional capacity to perform the requirements of his past relevant work or other work existing in significant numbers in the national economy. In making that assessment, the ALJ considered all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR §§ 404.1529 and 416.929, and Social Security Ruling 96-7p. The ALJ also had to consider any medical opinions which are statements from acceptable medical sources, which reflect judgments about the nature and severity of the impairments and resulting limitations.

14

A State Agency physician opined that the Plaintiff had the residual functional capacity to perform the full range of "light" work. (Tr. 264-271). The State Agency physician noted that the severity of the Plaintiff's pain did not support a total disability finding. The ALJ agreed with the State Agency physician and found the Plaintiff to have the following RFC: ability to lift and/or carry ten pounds frequently, and twenty pounds occasionally; in an 8 hour workday (with normal breaks) he can stand and/or walk for a total of about 6 hours; can sit for a total of about 6 hours; and has an ability to push and/or pull consistent with his ability to lift and carry.

The ALJ addressed the Plaintiff's exertional and non-exertional limitations in his decision as follows:

> In terms of the claimant's physical abilities, the claimant testified that he could carry fifty pounds, could stand for a couple of hours and could sit "ok." He further testified that he was sometimes forgetful, had some problems with concentrating and understanding, but could get along with coworkers, family and neighbors. The record revealed no psychiatric treatment or hospitalizations from any mental illness, and the claimant did not allege any treatment. Interestingly, the treatment record dated June 11, 2000 showed that the claimant reported that he was disabled although he worked for Labor Plus on occasion. The undersigned concludes that the claimant's testimony and from the treatment records that the claimant, despite his impairments, is not precluded from performing all substantial gainful activity, although he is precluded from performing work at high exertional levels.

The ALJ also considered the Plaintiff's abdominal pain and noted that the Plaintiff had a history of drug and alcohol abuse. The ALJ further states:

> Treatment records showed that the claimant's alcohol usage was directly related to his gastric difficulties and that his symptoms subsided when he received treatment with GI cocktails. Moreover, there were no abnormal findings on examination and laboratory testing related to the claimant's complaint other than a small gallbladder polyp. Thus, it is apparent that the claimant's abuse of alcohol resulted in exacerbation of his gastric symptoms.

Pain is a non-exertional impairment. Id. at 1559. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g. medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423 (d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard." Foote, 67 F.3d at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423 (d)(5)(A).

The Plaintiff has not provided sufficient medical evidence to support a finding of disabling back pain. As noted by the ALJ, there is no underlying cause for the Plaintiff's abdominal pain but rather it is exaggerated by the Plaintiff's excessive alcohol use. Clearly, the ALJ gave proper consideration to the Plaintiff's testimony, the medical record, and the medical opinions contained within. The ALJ properly articulated his reasoning for finding the Plaintiff's non-exertional limitations as not severe and the Court will not disturb his finding.

16

Therefore, without the existence of non-exertional limitations and having found the Plaintiff capable of a full range of light work, use of the Grids was entirely appropriate to assess what other work can be performed by the Plaintiff.  Thus, the Plaintiff's argument lacks merit because a reviewing court will not overturn an ALJ's decision where it is supported by substantial evidence.  Hale v. Bowman, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

### (2) Whether the ALJ Failed to Fully Develop the Record by Not Ordering a Consultative Psychological Examination

The ALJ is required to order additional medical tests and examinations only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; Conley v. Bowmen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Holladay v. Bowen, 848 F.2d 1206, 1209 (11th Cir. 1988); Reeves v. Heckler, 734 F.2d 519, 522 n. 1 (11th Cir. 1984) (failure to order such an evaluation may be reversible error). Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary. 20 C.F.R. §416.917 (1998).

Although, the statute does not require consultative examinations, the regulations provide for them where warranted.  Butler v. Barnhart, 347 F.Supp.2d. 1116 (11th Cir. 2003).  20 C.F.R. § 404.1517 provides:

(a)(1) *General*.  The decision to purchase a consultative examination for

you will be made after we have given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnoses, and prognosis) is readily available from the records of your medical sources.

(b) *Situations requiring a consultative examination*.  A consultative examination may be purchased when the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on your claim.  Id at 1121.

In this case, the Plaintiff alleges that the ALJ failed to develop the evidence of a mental impairment.  However, the Plaintiff did not include these impairments as part of his claim. The Plaintiff's did not testify to suffering from depression.  The Plaintiff testified that he has difficulty concentrating, however, he got along with family, neighbors and coworkers. (Tr. 348).  Further, a review of the medical record does not reveal the Plaintiff received any treatment for psychiatric or mental problems.

Where the Plaintiff does not provide the medical information necessary to enable the ALJ to make a determination regarding the alleged impairment, the ALJ will make a decision on the evidence presented. 20 CFR § 404.1516.  It is well established that the Plaintiff bears the burden of proving that he is disabled and consequently, he is responsible for producing medical evidence in support of his claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a)).  The Plaintiff's mere allegation that he has an impairment without providing any medical support is not sufficient. Ellison, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(c) stating claimant must provide medical evidence showing that he has an impairment and how severe it is during the time the claimant says he is disabled).  The record demonstrated that the ALJ considered the Plaintiff's impairments in combination and still found him not disabled. Because the Plaintiff did not present medical evidence to support a mental impairment claim, the ALJ was not required to order a consultative examination.  Therefore, the Plaintiff's argument

18

lacks merit.

*(3)Whether the Case Should be Remanded Under Sentence Six §405(g)*

The Plaintiff argues that the Appeals Council failed to consider new evidence submitted after the hearing and subsequent denial by the ALJ.  The Defendant contends that the evidence submitted to the Appeals Council does not warrant remand because it is not "new" evidence and thus, does not satisfy the requirements under Sentence Six.

The Eleventh Circuit has held that when the Appeals Council has denied review, the Court will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence.  Falge vs. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998).   The correctness of the decision depends on the evidence presented to the ALJ.  Id at 1323.  The ALJ cannot be faulted for having failed to weigh evidence never presented to him.  Id at 1323.

Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to  be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  Jackson, 99 F.3d at 1090 - 92; Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir. 1994).  With a sentence-six remand, the parties must return to the district court after remand to

file modified findings of fact. <u>Jackson</u>, 99 F.3d at 1095. The district court retains jurisdiction

pending remand, and does not enter a final judgment until after the completion of remand

proceedings. <u>Id</u>.

Here, the Plaintiff alleges that new evidence submitted to the Appeals Council warrants a

remand under Sentence Six.  The Plaintiff was provided with a hearing on January 8, 2002.  (Tr.

337-353).  The Plaintiff did not mention at any time during the hearing that additional evidence

would be provided to the ALJ for his consideration, therefore, the ALJ did not have reason to

keep the record open to consider new evidence.   As a result, the ALJ closed the record at the end

of the hearing and proceeded to make a determination based upon the medical evidence presented

prior to the close of the record.   The Plaintiff's additional medical evidence was an HIV form

completed by the Dr. Robert Schwartz dated December 5, 2003, approximately one year and 10

months after the ALJ made his final decision.  (Tr. 321-323).  The questionnaire indicated that the

Plaintiff suffered from HIV wasting syndrome, fevers, and night sweats. (Tr. 323).  However,

other notes from Dr. Schwartz indicated that the Plaintiff did not suffer from fevers, night sweats,

fatigue, thrush, appetite loss, dysphagia, nausea, vomiting, diarrhea, cough, shortness of breath,

lymphadenopathy, skin lesions, visual changes, headache, memory changes, weakness, numbness,

tingling or difficulty walking.  (Tr. 327).

Furthermore, 20 C.F.R. §404.970(b) provides:

> If new and material evidence is submitted, the Appeals council shall
> consider the additional evidence only where it relates to the period on or before the
> date of the administrative law judge hearing decision.  The Appeals Council shall
> evaluate the entire record including the new and material evidence submitted if it
> related to the period on or before the date of the administrative law judge hearing
> decision.  It will then review the case if it finds that the administrative law judge's
> action, findings, or conclusion is contrary to the weight of the evidence currently

of record.

The Plaintiff's additional evidence from Dr. Schwartz was related to his condition approximately one year and ten months after the ALJ's final decision.  Because the evidence was outside of the timeframe established by the Regulations, it does not warrant a remand.  Therefore, the Plaintiff's argument that the Appeals Council failed to properly consider additional evidence and that the Court should remand the case under Sentence Six lacks merit.

Based upon the reasons above, the Court finds that the ALJ applied the correct legal standard and the decision was based upon substantial evidence such that the evidence would be accepted by a reasonable person in support of the decision.

Accordingly, it is now respectfully

**RECOMMENDED:**

The Decision of the Administrative Law Judge should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**DONE AND ORDERED** at Fort Myers, Florida, this _13th_ day of July, 2005.

**SHERI POLSTER CHAPPELL**
**UNITED STATES MAGISTRATE JUDGE**

Copies:
Counsel of record
MJCD

21